Allen, P.
In this case the appellee Baker, the purchaser of the interest of A. Bauseman in certain lands in Wood county, and which had been conveyed *381 to him by a deed with special warranty, filed a bill to enjoin the collection of the purchase money unpaid, upon the ground of a defect of title to a large portion of the land.
The bill alleges, amongst other things, that prior to his purchase, a portion of the land, two hundred acres, was sold by the sheriff of Wood county in February 183-5 for the nonpayment of taxes, at which sale Josiah M. Steed became the purchaser; that he assigned the interest so acquired to his father Henry Steed the appellant, to whom the clerk of Wood county conveyed the two hundred acres on the 22d of May 1837. The bill also avers that the said Adam Bauseman, on the 20th of November 1837, executed a power of attorney to said J. M. Steed to sell and convey his interest in said lands, and that J. M. Steed, under such power, sold to his father Henry Steed the interest of A. Bauseman in and to one of the tracts of land in question, and conveyed the same, estimated to be one hundred acres, by deed dated the lltli of September 1840; and that under said deed Henry Steed had taken possession of the land, and held and claimed the same against the appellee Baker. The bill further avers, that on the 19th of October 1840 the appellant H. Steed purchased a further portion of three hundred acres of said lands, at a sale for taxes, and received a deed therefor from the clerk of the court on the 7th of September 1843. The conveyance from A. Bauseman and wife to Baker is dated the 16th of October 1841, and purports to convey one equal undivided moiety of two tracts of land, each containing five hundred acres, with covenants of warranty against themselves and all persons claiming under them.
The bill further charges in general terms, that the sale made by J. M. Steed to the appellant was fraudulent, and that the appellant had not, so far as the *382 appellee Baker knew, paid a cent of the purchase money to the agent J. M. Steed or his principal A. Bauseman.
It further charges in general terms, that the sale of the two hundred acres for taxes was illegal, without showing in what particular; and also charges that the sale and conveyance thereof to Henry Steed was illegal, fraudulent and void. And it further avers, that the appellant was employed by J. M. Steed the agent of Bauseman, to buy in the land for the heirs of the original patentee Jacob Bauseman, at the last sale for taxes: but that instead of giving to the purchase its proper destination, he and his son were fraudulently combining to enable him to retain the said three hundred acres under said purchase. It is further alleged by the appellee Baker, that he is in the actual possession of but a small portion of said tracts of land; and that he does not hold that portion free from the claims of others. Conceiving that the sale of land by J. M. Steed the agent, to Henry Steed, and the sales by the sheriffs for taxes if valid, are within the covenants of A. Bauseman, the appellee Baker insists he would be entitled to an abatement of the purchase money, or a rescission of his contract of purchase; and he makes the Steeds and Bauseman parties, and asks for an injunction until Bauseman removed the liens and claims of the Steeds, and for general relief.
The Steeds answer, denying the general allegations of fraud and illegality charged in the bill; and Henry Steed relies upon his legal title, and insists that the complainant had no just cause, on his own showing, to bring him into chancery; and avers that he then held the tracts of one hundred and two hundred acres in possession.
Bauseman answers, and by his answer and the exhibits filed therewith, attempts to show that J. M. Steed was either his agent, or that he stood in such a *383 confidential relation to him and the other heirs of Jacob Bauseman the claimants of the land, and had been guilty of such concealment as agent, as to render his purchase of the two hundred acres for taxes fraudulent; that the purchase of three hundred acres by Henry Steed for taxes was made under some understanding and arrangement with the agent, and was made for the heirs; and that the sale of J. M. Steed to the appellant of the one hundred acres and the conveyance thereof as attorney in fact of Bauseman, was without consideration and void.
At the final hearing, the court being of opinion that J. II. Steed, under the circumstances, was not entitled to hold the two hundred acres purchased at the sale for taxes against the codefendant Bauseman, and that Henry Steed occupied the place of his vendor, ordered and decreed that the deed from the clerk to Henry Steed should be canceled, set aside and annulled. And being further of opinion, that the record disclosed a state of facts which forbids the sale of J. M. Steed as attorney in fact of Bauseman, to be binding, it also annulled his deed, and also the deed from the clerk to Henry Steed for the three hundred acres purchased by him at the sheriff’s sale. And having thus cleared away the defects of title so far as the appellant was concerned, the decree proceeded to dissolve the injunction to the collection of the purchase money, suspending the effect of the order of dissolution, until certain deeds were properly acknowledged for record, or security for indemnity given.
The first, and as it seems to me, fatal objection to this decree, is, that it has proceeded entirely upon facts alleged in the answer of a codefendant, to which the Steeds had no opportunity -whatever of responding.
The alleged fraud of J. M. Steed, owing to the fact of his agency and the supposed confidential relation in which he stood to the parties interested in the land, *384 before the date of the power of attorney from A. Bauseman, his subsequent concealment of his purchase, and the confidential relation between him and his father, and their alleged co-operation in the supposed fraudulent arrangement to vest the latter with the legal title to the most valuable portions of the land, seem to have been the grounds of the decree.
ISfo issues of this kind were raised by any specific allegations in the bill. The existence of these adverse claims constituted the grounds of relief on the part of Baker against his vendor. The equities between A. Bauseman and his codefendants did not arise out of the pleadings and proofs between Baker and the defendants in the court below. The claims of Henry Steed the appellant, have been finally adjudicated, and the title asserted by him under his various deeds, annulled, upon a state of facts not averred in the bill, and to which therefore neither he nor J. M. Steed have had an opportunity of responding. They were not bound under any allegation in the bill to state their own case as against the codefendant Bauseman. If a decree was sought against them upon the grounds relied on in that answer, they should have been averred either by a cross bill or an amended bill, so as to entitle the appellant and J. M. Steed to the benefit of their answers. If the appellant and J. M. Steed could be decreed against in this suit under any state of the pleadings, the decree rendered was erroneous under the authority of the case of Blair v. Thompson, 11 Gratt. 441, and the cases there cited. But it seems to me there is a fatal objection to this whole proceeding, so far as the interests of the appellant were involved. He was in possession, claiming the legal title under a deed of the clerk for land sold for taxes, and under a deed from A. Bauseman, through his attorney in fact. His deed for two hundred acres purchased at the sheriff’s sale in 1835, was executed on *385 the 22d of May 1837. His deed from J. M. Steed as attorney in fact of A. Bauseman, preceded the deed to Baker; and the second purchase at the sherilf’s sale by the appellant Henry Steed was before Baker’s deed; although the last conveyance to Henry Steed by the clerk was subsequent to the conveyance by A. Bauseman to Baker.
There was no privity whatever between Baker and the appellant Henry Steed. The latter is averred to be in possession of the land, claiming under conveyances purporting to vest him with the exclusive title. The appellee Baker had no equity against him; he purchased with full knowledge of the adverse claim. His equity to enjoin the payment of the purchase money, until his vendor complied with the covenants of his deed, gave him no equity against this adverse claimant, whatever equity might have existed in favor of his vendor, growing out of the alleged fraud of J. M. Steed and notice thereof or participation therein by the appellant.
As to the charge that the sales for taxes and the deeds from the clerk were illegal, independent of the question of fraud; such illegality would avoid them at law, and a court of law was the proper forum to test the legal validity of those deeds. It would be against all just principles to sanction a proceeding whereby a third person was permitted and encouraged to intervene in a controversy with which he had no concern ; to purchase with a full knowledge of the adverse claim, that he might thereby be enabled, under pretense of having an equity against his vendor, to assert the equity of his vendor against others, and against whom the complainant himself had no equity whatever.
So far as respects the alleged illegality of the tax deed, this case cannot be distinguished in principle from the case of Lange v. Jones, 5 Leigh 192. That *386 was a bill exhibited by the vendee against the vendor alleging a contract for the purchase of eight hundred acres of land, the payment of a portion of the purchase money, and the withholding of the residue because the vendee had discovered that a third person claimed a portion of the land under a purchase from another claiming under a different title, and had actually taken possession thereof; and praying that the rights of his vendor and the conflicting claimant might be ascertained, and if his vendor had no right to the part of the land held by the conflicting claimant, that there should be an abatement from the purchase money.
• Upon hearing, the chancellor dismissed the bill as to the conflicting claimant, continuing the case as between the vendee and vendor, for further proceedings.
Judge Carr was of opinion that the case fell within the principle of Stuart's heirs v. Coalter, 4 Rand. 74, which, he remarks, was well considered, and from which, therefore, he was opposed to departing. That case decided that a court of equity has no jurisdiction to settle the title or bounds of land between adverse claimants, unless the plaintiff has an equity against the defendant claiming adversely to him: An equity against other persons will not give such jurisdiction. I have already observed that the alleged fraud upon A. Bauseman constituted no equity in favor of' his vendee, purchasing under the circumstances disclosed in this case, as against the appellant. And as to the supposed illegality of the tax sales and deeds, there could, as Judge Tueker observed in the case of Lange v. Jones, have been no difficulty in having a trial of the legal title before the proper tribunal by the institution of an ejectment in the name of the vendor against the adverse claimant; until the decision of which the vendor might have been enjoined by bill in equity.
The cases of Allen v. Smith, 1 Leigh 1; Ruffners v. *387 Lewis' ex’or, 7 Leigh 720; and Wagner v. Dyer, 11 Leigh 384, were cases of the sale and purchase of mere equitable rights; of purchases made, not by a stranger voluntarily intervening in the controversies of others, but by creditors to save themselves from loss; and under the peculiar circumstances, were sustained.
In this case the purchase was made by a stranger of the legal title to property then in the adverse possession of the appellant claiming the legal title under conveyances, the validity of which could have been readily settled in an action at law.
The case of Allen v. Taylor, referred to by Tucker, president, in Ruffners v. Lewis’ ex'or, 7 Leigh 720, as decided by this court, seems, from the statement of the judge, to have resembled this case in its circumstances; and the principle of that decision was approved.
So in this case, if the legal validity of the deeds under which the appellant claims is admitted, but they are to be assailed for the alleged fraud affecting the conscience of the appellant, either upon the ground of notice, or participation therein, or want of consideration, that is an equity to be asserted by Bauseman, the party defrauded, and not by one voluntarily intervening with full knowledge of the adverse claim. Or if relief is sought upon the ground of the alleged illegality of the tax deeds, that is a question to be tried at law.
I think the court should have dismissed the bill as against the appellant and J. M. Steed, without, prejudice to the right of the appellee A. Bauseman, to file a bill in equity to impeach the deeds, or any of them, under which the appellant claims, for fraud; or to the right of the appellees, or either of them, to show the illegality of said deeds, or either of them, at law. That the injunction should have been continued a reasonable time to enable the said A. Bauseman to insti *388 tute proper proceedings to test the validity of said deeds; and upon his failure to institute such proceedings or to prosecute the same to a successful issue, there should be an abatement of the purchase money, or a rescission of the contract of sale, as the rights of the parties may require.
Moncure, J.
I am so well satisfied as to the justice of the decree of the Circuit court in this case, and so doubtful as to the validity of the objections made to it, that I am very reluctant in agreeing to reverse it. I cannot concur with the majority in dismissing the bill as to the Steeds. The farthest I can go for the appellant is to reverse the decree and remand the cause, with liberty to the appellee Baker to amend his bill and charge more specifically fraud and illegality in the conveyances under which the appellant claims title to the land in controversy, or any part thereof. I think the Steeds were properly made parties to the suit, and that the case materially differs in principle from those of Stuart's heirs v. Coalter, 4 Rand. 74, and Lange v. Jones, 5 Leigh 192, relied on by the appellant’s counsel.
The other judges concurred in the opinion of Allen, P.
Decree reversed.